**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

SANTANDER BANK, N.A.,

Plaintiff,

**REPORT AND RECOMMENDATION**

-against-

**23-cv-6233-NRM-ST**

BISON EXPEDITE INCORPORATED d/b/a VRZ Trucking and VICTOR H. RAMIREZ a/k/a VICTOR HUGO RAMIREZ,

Defendants.

-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On August 18, 2023, Santander Bank, N.A. ("Plaintiff") sued Bison Expedite Incorporated d/b/a VRZ Trucking ("Bison") and Victor H. Ramirez a/k/a Victor Hugo Ramirez ("Ramirez" and together with Bison, "Defendants") for breach of a note and schedule, breach of a guaranty, foreclosure of a security interest, and replevin. Before this Court is Plaintiff's motion for default judgment against Bison[1] (the "Motion"). For the reasons discussed below, this Court respectfully recommends that the District Court GRANT the Motion.

## BACKGROUND[2]

In November 2020, Plaintiff and Defendants entered a commercial loan agreement. *See* Compl. ¶ 8, ECF No. 1. Under the agreement, Plaintiff loaned Bison $284,760.00 to finance the

[1] Plaintiff does not move for default judgment against Ramirez due to Plaintiff's inability, thus far, to serve Ramirez. Plaintiff requests that the Court sever all claims against Ramirez. *See* Gates Aff. ¶ 4, ECF No. 23-1. The Court grants Plaintiff's request and severs all claims against Ramirez. *See* Fed. R. Civ. P. 21 ("[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

[2] The Court takes the facts from the Complaint and its exhibits. *See* Compl., ECF No. 1; Compl. Exs. 1–6, ECF Nos. 1-1–1-6; *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit"); *Keybank Nat'l Ass'n v. Nour Limo, Inc.*, 345 F.R.D. 555, 563 (E.D.N.Y. 2024) (court considering complaint's exhibits when assessing motion for default judgment). This Court assumes that the Complaint's well-pleaded factual allegations, except those concerning damages, are true. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6, 84 (2d Cir. 2009).

purchase of several vehicles (the "Collateral"). *Id.* ¶¶ 8, 9. Several documents reflect that agreement, including: (1) a Promissory Note and Security Agreement, along with a Texas Commercial Promissory Note and Security Agreement Rider (collectively, the "Note"); (2) a Schedule (the "Schedule"); and (3) Ramirez's personal guaranty (the "Guaranty"). *Id.* ¶ 8. On November 25, 2020, Ramirez, as Bison's president, signed the Note and Schedule. *See* Note, ECF No. 1-1; Schedule, ECF No. 1-2. Also on November 25, 2020, Ramirez signed the Guaranty as the Guarantor. *See* Guaranty, ECF No. 1-3. Under the Guaranty, Ramirez, as Guarantor, "absolutely, unconditionally and irrevocably" guaranteed payment and performance of Bison's obligations under the Note. Compl. ¶ 18.

The Note and Schedule require Bison to pay Plaintiff the principal loan amount, plus interest, in seventy-two (72) $3,955.00 monthly installments. *See id.* ¶¶ 12, 13. The Note grants Plaintiff a security interest in the Collateral. *Id.* ¶ 21. The Note also defines several "Events of Default," including Bison's failure to pay any installment under the Note when due. *Id.* ¶ 15. In the Event of Default, the Note entitles Plaintiff to, among other things:

> (i) collect all unpaid amounts due under the Note on an accelerated basis . . . (ii) immediately repossess the Collateral and/or demand that Borrower make the Collateral available for repossession by Plaintiff at a defined time and place . . . (iii) sell or otherwise dispose of the Collateral at Borrower's expense . . . (iv) collect default interest accruing on all unpaid amounts under the Note at the rate of eighteen percent (18%) per annum (or, if less, the maximum rate permitted by law) ("Default Interest") . . . (v) collect a one-time late charge equal to five percent (5%) of each installment due under the Note which Borrower fails to pay within ten (10) days after the due date thereof (collectively, "Late Charges") . . . and (vi) recover all costs, expenses, and attorneys' fees incurred by Plaintiff in connection with its enforcement of the Note.

*Id.* ¶ 16.

Starting on or about January 25, 2023, and continuing thereafter, Bison stopped making the required monthly payments to Plaintiff. *Id.* ¶ 23. On May 30, 2023, Plaintiff sent Defendants a

letter demanding, among other things, payment of all outstanding amounts due under the Note and surrender of the Collateral. *Id.* ¶ 25. Defendants never resumed payments or surrendered the Collateral. *See id.* ¶¶ 25, 28.

Plaintiff filed its Complaint against Defendants on August 18, 2023. *See generally id.* Plaintiff reported that Bison was served via the Texas Secretary of State on September 29, 2023.[3] *See* Summons Returned Executed, ECF No. 13. Bison failed to respond or otherwise defend against the Complaint. On January 9, 2024, Plaintiff requested a certificate of default against Bison, which the Clerk of Court entered on January 19, 2024. *See* Entry Default, ECF No. 16. On April 9, 2024, Plaintiff moved for default judgment against Bison, which was denied on March 4, 2025 for failure to comply with Local Civil Rule 7.1. *See Santander Bank, N.A. v. Bison Expedite Inc.*, No. 23-CV-6233-NRM-ST, 2025 WL 1640545 (E.D.N.Y. Jan. 30, 2025), *report and recommendation adopted on March 4, 2025*. On October 24, 2025, Plaintiff filed its renewed motion for default judgment. *See Mot.*, ECF No. 23. On October 27, 2025, the Honorable Nina R. Morrison referred the Motion to this Court for a Report & Recommendation. *See* Docket Order, dated October 27, 2025.

## LEGAL STANDARD

Obtaining a default judgment is a two-step process. *See* Fed. R. Civ. P. 55. Step one is to obtain an entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Step two is to seek default judgment. *See* Fed. R. Civ. P. 55(b). "If the plaintiff's claim is for a sum certain

[3] Plaintiff further reported that, as of December 18, 2023, it had been unable to locate Ramirez but would make additional attempts to serve him. *See* Minute Entry, ECF No. 12.

or a sum that can be made certain by computation," the clerk must, "on the plaintiff's request, with an affidavit showing the amount due . . . enter judgment for that amount and costs against a defendant . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases," a party must move for a default judgment before the court. Fed. R. Civ. P. 55(b)(2).

When a plaintiff moves for default judgment, the court must accept the complaint's well-pleaded factual allegations as true. *Finkel*, 577 F.3d at 84; *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."). From there, the court must determine whether the facts alleged establish the defendant's liability as a matter of law. *Mickalis Pawn Shop*, 645 F.3d at 137. After all, "liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010).

After determining that a defaulting party is liable, the court decides whether, and how much, to award in damages. *See Finkel*, 577 F.3d at 83 n.6 ("a default is not an admission of damages"). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To show entitlement to damages, the movant must show that the "compensation sought relates to the damages that naturally flow from the injuries pleaded." *Morales v. B&M Gen. Renovation Inc.*, 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y Mar. 9, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). The court can decide whether, and how much, to award in damages without an evidentiary hearing if "sufficiently detailed affidavits and documentary evidence" support the request for

damages. *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, 15-cv-6505 (NGG), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016).

**JURISDICTION & VENUE**

**I. Subject Matter Jurisdiction**

Before granting a default judgment motion, "a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, 20-cv-150, 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021). Here, this Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

**II. Personal Jurisdiction**

Before granting a motion for default judgment, a court may assure itself that it has personal jurisdiction over the defendant. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 76 (2d Cir. 2023) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)). As provided in Section 9.11 of the Note, in all its capitalized glory:

> DEBTOR IRREVOCABLY CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT, MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. DEBTOR, BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING…

Ex. 1 to Pl.'s Mot, ECF No. 1-1. Here, the forum selection clause is overwhelmingly clear in that Debtor Defendant consents to personal jurisdiction before this Court.

## DISCUSSION

### I. LIABILITY

Plaintiff advances four causes of action against Defendants in their Complaint: (1) for breach of the note and schedule, (2) for breach of a guaranty, (3) for foreclosure of a security interest, and (4) for replevin.[4] The Court addresses each cause of action in turn below.

*A. Breach of Note and Schedule*

Defendants are liable for breach of the Note and Schedule. To state a claim for breach of contract under New York law, a plaintiff must plead the following elements: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996).

Here, Plaintiff and Defendants entered a commercial loan agreement in November 2020. *See* Compl. ¶ 8.[5] Under the agreement, Plaintiff loaned Bison $284,760.00 to finance the purchase of several vehicles. *Id.* ¶¶ 8, 9. Several documents reflect that agreement, including a Promissory Note and Security Agreement, along with a Texas Commercial Promissory Note and Security Agreement Rider (collectively, the "Note") and the Schedule. *Id.* ¶ 8. On November 25, 2020, Ramirez, as Bison's president, signed the Note and Schedule. *See* Note, ECF No. 1-1; Schedule, ECF No. 1-2. Therefore, an agreement (the Note and Schedule) existed between Plaintiff and Defendants. Second, Plaintiff has sufficiently alleged adequate performance as Plaintiff loaned Defendants $284,760.00 to finance the purchase of several vehicles as pursuant to the Note.

---

[4] Plaintiff requests the Court sever its second cause of action for breach of guaranty. The Courts grants Plaintiff's request. *See infra* p. 7 for a more detailed discussion.

[5] It must be reiterated that when a plaintiff moves for default judgment, the court must accept the complaint's well-pleaded factual allegations as true. *Finkel*, 577 F.3d at 84; *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.").

Compl. ¶¶ 8, 9. Third, Defendant breached the agreement. The Note and Schedule require Defendants to pay Plaintiff the principal loan amount, plus interest, in seventy-two (72) $3,955.00 monthly installments. *See id.* ¶¶ 12, 13. The Note also defines several "Events of Default," including Defendants' failure to pay any installment under the Note when due. *Id.* ¶ 15. In the Event of Default, the Note entitles Plaintiff to, among other things:

> (i) collect all unpaid amounts due under the Note on an accelerated basis . . . (ii) immediately repossess the Collateral and/or demand that Borrower make the Collateral available for repossession by Plaintiff at a defined time and place . . . (iii) sell or otherwise dispose of the Collateral at Borrower's expense . . . (iv) collect default interest accruing on all unpaid amounts under the Note at the rate of eighteen percent (18%) per annum (or, if less, the maximum rate permitted by law) ("Default Interest") . . . (v) collect a one-time late charge equal to five percent (5%) of each installment due under the Note which Borrower fails to pay within ten (10) days after the due date thereof (collectively, "Late Charges") . . . and (vi) recover all costs, expenses, and attorneys' fees incurred by Plaintiff in connection with its enforcement of the Note.

*Id.* ¶ 16. Starting on or about January 25, 2023, and continuing thereafter, Bison stopped making the required monthly payments to Plaintiff. *Id.* ¶ 23. "When performance of a duty under a contract is due[,] any non-performance is a breach." *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (citing Restatement (Second) of Contracts § 235(2)). Therefore, Defendants breached the Note and Schedule by failing to continue making payments pursuant to the agreement. Lastly, Defendants were allegedly damaged by such breach in the amount of $189,840.00, plus late charges and fees in the amount of $1,386.50, plus interest accruing at the Default Rate of 18% and Late Charges at the rate of 5% per month from May 24, 2023. Compl. ¶ 36.

*B. Breach of Guaranty*

Plaintiff requests that its second cause of action, breach of guaranty be severed as it has not been able to serve Mr. Ramirez. *See* Mot. at 4. The Court grants this request and dismisses Plaintiff's breach of guaranty claim without prejudice.

*C. Foreclosure of a Security Interest*

Plaintiff has sufficiently established a prima facie case entitling it to a judgment foreclosing on its security interest in the Collateral. Article Nine of the UCC provides that after a borrower defaults, "a secured party may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." N.Y. U.C.C. § 9-601(a)(1); *see Rapillo v. CitiMortgage, Inc.*, 15-CV-5976 (KAM) (FML), 2018 WL 1175127, at *7 (E.D.N.Y. Mar. 5, 2018) (citing N.Y. U.C.C. § 9-610(a)(1)).

In the instant matter, Plaintiff holds a valid, perfected security interest in the Collateral (the four vehicles purchased by Defendants through Plaintiff's financing). *See* Compl. ¶¶ 21-22; *see also* Ex. 2 to Compl, ECF No. 1-2, for a detailed list of the vehicles. Since the undisputed record demonstrates that Defendants have defaulted, the UCC enables the Plaintiff to take possession of the Collateral and dispose of it pursuant to Article Nine. *See Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167 (RER), 2019 WL 8807747, at *7 (E.D.N.Y. Sept. 9, 2019) (citing *Jacobi Tool & Die*, 2019 WL 3553796, at *6).[6] Therefore, Plaintiff is entitled to a judgment foreclosing on its security interest in the Collateral listed in Exhibit 2 to Plaintiff's Complaint.

*D. Replevin*

Plaintiff is not entitled to replevin. Under New York law,

> [r]eplevin is a remedy employed to recover specific, identifiable items of personal property. A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right. A replevin claim against a good-faith possessor accrues when the true owner

[6] *See Jacobi,* 2019 WL 3553796 at *6 ("Under Article Nine of the New York Uniform Commercial Code, after a borrower defaults, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest ... by any available judicial procedure." N.Y. U.C.C. § 9-601(a)(1). A secured creditor's rights "are cumulative and may be exercised simultaneously." *Id.*, § 9-601(c). Further, "[a]fter default, a secured party may take possession of the collateral" "pursuant to judicial process[ ] or without judicial process, if it proceeds without breach of the peace." *Id.*, § 9-609(a)10, (b)(1)-(2). Once in the secured party's possession, in compliance with § 9-610, the collateral may be disposed. *See id.*, § 9-610(a); *see also Rapillo*, 2018 WL 1175127, at *7 ("New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor.")."

> makes demand for return of the chattel and the person in possession of the chattel refuses to return it.

*Jacobi Tool*, 2019 WL 3553796, at *6 (quoting *TAP Manutenção e Engenharia Brasil, S.A. v. Int'l Aerospace Grp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) (cleaned up)).

In the instant matter, Plaintiff is not entitled to replevin as Plaintiff's replevin claim appears to duplicate its foreclosure claim. Equitable claims for replevin, conversion, and unjust enrichment are "unavailable as duplicative where, as here, they are alternative remedies to enforce contractual rights." *Bank of Am., N.A. v. City View Blinds of N.Y., Inc.*, No. 20 CIV. 9911 (SLC), 2022 WL 580764, at *6 (S.D.N.Y. Feb. 25, 2022) (citing *Bank of Am., N.A. v. Dexter Sales, Inc.*, No. 19-CV-0110 (ENV) (JO), 2020 WL 1853133, at *4 (E.D.N.Y. Feb. 27, 2020) (collecting cases and recommending dismissal of bank's replevin, conversion, and unjust enrichment claims), *adopted by* 2020 WL 4345005 (E.D.N.Y. July 30, 2020); *Jacobi Tool*, 2019 WL 3553796, at *6 n.5 (noting that the replevin claim appeared to duplicate bank's foreclosure claim, which achieved the same outcome). Therefore, Plaintiff's replevin claim is duplicative.

## II. DAMAGES

Since liability has been established, this Court must now ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To prove damages, the movant need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,

109 F.3d 105, 111 (2d Cir. 1997) (internal citations and quotations omitted); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

In the instant matter, Plaintiff seeks monetary damages of $271,740.16. *See* Proposed Order Granting Default J. at 1, ECF No. 23-9. Plaintiff also seeks possession of the Collateral. The Court will consider both categories in turn.

*A. Monetary Damages*

As an initial matter, the record does not clearly establish how Plaintiff calculated the $189,840.00 amount that it characterizes as outstanding "principal." Schedule 000 identifies four individual "Loan Amounts" totaling $232,038.00 and requires seventy-two monthly payments totaling $3,955.00 per month. Schedule 000 at 2, ECF No. 1-2. The Note likewise provides that Bison must repay the "[l]oan Amount(s) plus interest" in installments and, upon an event of default, permits Plaintiff to accelerate the "entire unpaid balance of payments." Note §§ 1, 7.2, ECF No. 1-1. The Complaint, however, describes the original loan as being in the amount of $284,760.00, which is the product of seventy-two monthly payments of $3,955.00, rather than the $232,038.00 identified as the total "Loan Amount" in Schedule 000. Compl. ¶ 10, ECF No. 1. Plaintiff thereafter identifies $189,840.00 as outstanding "principal." Compl. ¶ 36; Sullivan Decl. ¶ 20, ECF No. 23-5. Notably, $189,840.00 is exactly equal to forty-eight monthly payments of $3,955.00. Thus, the amount may represent the accelerated unpaid balance of scheduled payments contemplated by Section 7.2 of the Note, rather than outstanding principal as that term is ordinarily understood. Plaintiff does not explain this distinction or otherwise reconcile the $232,038.00, $284,760.00, and $189,840.00 figures. The payment evidence creates additional uncertainty. Plaintiff's original payment-history report contains numerous payment entries and reversals and reports net payments of $34,062.23. Compl. Ex. 6, ECF No. 1-6 at 2. Plaintiff's renewed submissions further

acknowledge a $3,955.00 payment on or about June 25, 2023. (Sullivan Decl. ¶¶ 15–17, ECF No. 23-5. The Note provides that payments are to be applied first to costs and expenses, then to late charges, then to interest, and finally to principal and other amounts due. Note § 9.2.2, ECF No. 1-1 at 5. Plaintiff has not submitted an account ledger or other calculation showing how the payments and reversals reflected in its records were applied pursuant to that provision or how they resulted in the claimed $189,840.00 outstanding balance.

Plaintiff's interest calculations are likewise internally inconsistent. The Sullivan Declaration seeks $5,076.29 in "contract interest" accruing from January 25, 2023, through June 25, 2023, and $40,886.49 in default interest at 18% from January 25, 2023 through February 1, 2024. Sullivan Decl. ¶ 20, ECF No. 23-5 at 5. In support of the former amount, Plaintiff submits an amortization schedule applying a 6.35% nominal annual rate to $189,840.00 from January 25 through June 25, 2023. Ex. B. to Mot., ECF No. 23-6. Plaintiff, however, does not identify any provision of the Note, Schedule 000, or Rider establishing a 6.35% rate or otherwise explain the contractual basis for that calculation. More significantly, the periods for Plaintiff's contract-interest and default-interest calculations overlap. The separate default-interest schedule applies an 18% nominal annual rate to the same $189,840.00 balance, includes the June 25, 2023, payment of $3,955.00, and calculates $40,886.49 in interest through February 1, 2024. Ex. C to Mot., ECF No. 23-7. Although Plaintiff describes this amount as default interest accruing "from January 25, 2023," the supporting schedule begins with a $189,840.00 balance dated December 25, 2022, and assesses its first month of 18% interest as of January 25, 2023. *Id.* The Complaint, by contrast, alleges that Bison's default began on or about January 25, 2023. Compl. ¶ 23, ECF No. 1. Moreover, the Note provides that an installment or accelerated balance that has become due bears interest at 18% per annum, and the Rider similarly provides that, "[i]n the event of default," the

Note bears interest at 18% per annum from the date of default. Note § 8.1, ECF No. 1-1 at 4; Rider, ECF No. 1-1 at 6. Plaintiff does not explain why both 6.35% contract interest and 18% default interest are recoverable on the same $189,840.00 balance during the overlapping January-to-June 2023 period, nor does it reconcile the starting date used in its default-interest schedule with the default date alleged in the Complaint.

The calculation of interest after February 1, 2024, is also insufficiently supported. Plaintiff asserts that an additional $59,040.24 in default interest accrued on the $189,840.00 balance between February 1, 2024, and October 22, 2025, but supplies no updated interest schedule or other calculation supporting that figure. Gates Aff. ¶ 32, ECF No. 23-1 at 6–7; Pl.'s Mem. at 3, ECF No. 23-8. This differs from Plaintiff's earlier calculation through February 1, 2024, which is accompanied by a detailed monthly amortization schedule. Plaintiff therefore has not identified the day-count convention, compounding methodology, or other method used to arrive at the additional $59,040.24. Plaintiff's submissions ultimately exacerbate these calculation issues by requesting inconsistent total amounts. Plaintiff's renewed affirmation adds $189,840.00 in purported principal, $1,386.50 in late charges and fees, $5,076.29 in contract interest, $40,886.49 in default interest through February 1, 2024, and $59,040.24 in additional interest, and expressly states that these amounts total $296,229.52 as of October 22, 2025. Gates Aff. ¶ 32, ECF No. 23-1 at 6–7. Yet Plaintiff's proposed judgment seeks only $271,740.16. Proposed J., ECF No. 23-9 at 1. The proposed award is therefore $24,489.36 less than the amount Plaintiff represents is due in its renewed application, and neither the proposed judgment nor the supporting papers explains the discrepancy. Nor does the record indicate that Plaintiff intentionally waived the difference. By contrast, Plaintiff expressly states elsewhere in its renewed application that it waives its request for additional late fees and attorneys' fees. Gates Aff. ¶ 39, ECF No. 23-1 at 8.

Finally, although Plaintiff seeks $1,386.50 in accrued late charges and fees, it does not provide an itemized calculation identifying the installments giving rise to those charges. Section 8.2 of the Note provides for a one-time late charge equal to 5% of an installment not paid within ten days of its due date. Note § 8.2, ECF No. 1-1 at 4. The claimed $1,386.50 is mathematically equivalent to seven 5% charges on the $3,955.00 monthly installment, but Plaintiff does not identify those seven installments or otherwise tie the requested amount to the payment history. This is particularly notable because the Complaint refers to "Late Charges at the rate of 5% per month from May 24, 2023," whereas Section 8.2 provides for a one-time charge of 5% of each delinquent installment. Compl. ¶ 36, ECF No. 1; Note § 8.2, ECF No. 1-1 at 4. Plaintiff has waived any request for additional late fees in the present motion, but the $1,386.50 already claimed must nonetheless be adequately substantiated.

Accordingly, the Court cannot determine from the present submissions whether Plaintiff is entitled to $271,740.16, $296,229.52, or some other amount. The inconsistencies concern not merely arithmetic but the underlying principal or accelerated balance, the application of payments, the applicable interest rates and periods, and the methodology used to calculate interest. The Court therefore respectfully recommends that Plaintiff's motion be granted with regards to liability, but that Plaintiff be permitted to submit a revised damages calculation supported by appropriate documentary evidence. Any renewed submission should: (1) reconcile the $232,038.00 original Loan Amount reflected in Schedule 000, the $284,760.00 amount alleged in the Complaint, and the $189,840.00 amount Plaintiff characterizes as outstanding principal; (2) identify and apply all payments and credits received from Bison; (3) identify the contractual basis for the 6.35% interest rate and explain whether and why that interest is recoverable in addition to 18% default interest; (4) identify the date of acceleration and the precise period and methodology used to calculate

default interest; (5) itemize the $1,386.50 in late charges and fees; and (6) state a single, definite amount of monetary damages sought as of a specified date, accompanied by a calculation permitting the Court to verify that amount.

*B. Possession of the Collateral*

The Court respectfully recommends that Plaintiff be permitted to foreclose its first-priority security interest in the Collateral and, upon obtaining lawful possession, sell or otherwise dispose of the Collateral in accordance with the Loan Documents and applicable law. *See* Note §§ 7.3.1–7.3.3, ECF No. 1-1. The Court further respectfully recommends that Bison, together with its officers, agents, employees, assigns, representatives, and persons acting in concert with it, be enjoined from moving, selling, assigning, transferring, secreting, or otherwise disposing of the Collateral. *See* Compl., Prayer for Relief ¶ 2(ii), ECF No. 1. To the extent Plaintiff's proposed judgment additionally seeks authorization for the U.S. Marshal to enter Bison's premises, seize the Collateral, obtain immediate possession, or compel turnover or transfer of the Collateral, the Court respectfully recommends that such relief be denied, consistent with the recommended denial of Plaintiff's replevin claim.

## **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT Plaintiff's Motion as to liability on Counts One and Three and as to Plaintiff's entitlement to possession of the Collateral, and direct Plaintiff to submit a revised damages calculation supported by appropriate documentary evidence.

**OBJECTIONS TO THIS REPORT AND RECOMMEDATION**

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-cv-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 28, 2026